The next case is Greiner v. United States, 1551-44. This case is Greiner v. United States, 1551-44. This case is Greiner v. United States, 1551-44. This case, and if I may, I'd like to reserve three minutes of my time for rebuttal. This case involves a proper tax treatment of income received by Mr. Greiner on the buyout of a contractual earn-out right. The court of federal claims below never reached the merits of that issue. Instead, looking to technical issues and technical rules under the accounting provisions of the tax code to find that there had been a change in method of accounting, and again, not addressing the merits of the case. There are three aspects of this case that I'd like to highlight for the court today. First is just the basic nature of the earn-out right, which I think is important to understand because it colors the understanding of the legal arguments. The second, and again, is how income associated with that earn-out right should be taxed or treated for the tax accounting rules in the Internal Revenue Code. And then third, I'd like to address in opening briefly the government's duty of consistency argument. Are you saying that there was not any change in the method of accounting that occurred? Correct. And this is including with the earn-out in 2004, the treatment of that? Correct. Okay. And I think that gets to the crux of the issue. You're going to explain that. I'm going to explain that, yes, Your Honor. Thank you. Let me just touch briefly on the nature of the earn-out right. And there are three things that happen relevant to this case. The first is Mr. Greiner received that earn-out right in kind, contractual right, in 2004 when his stock options in Advanced Bonus Corporation were canceled. And how did he treat that for accounting purposes? For accounting purposes, it was not taxed and not treated as income. So in 2004, the in-kind receipt of a contract right was treated as an open transaction. So no tax was paid in 2004. Moving forward, in 2006 and 2007, payments were made to Mr. Greiner with respect to the earn-out right. So there's a contract saying if certain targets are met, gross income targets on these product lines, you will get payments. Those payments were made. Tax was paid on those payments. Again, consistent with the open method. Well, yes, consistent with the open method. I don't think that that in itself is an open method because you're actually looking at the income in 2006 and 2007. He's not deferring it in 2006 and 2007. He's actually paying tax on it. But it is consistent with the open method that was adopted in 2004. To contrast that with the closed method, if you want to look back in 2004, had he paid tax in 2004 on a receipt of the in-kind right, those payments made in 2006 and 2007 would have been tax-free to Mr. Greiner. He would have paid no tax because it would have been a recovery of his basis in the contract. And I think that the Court of Claims below recognized that. So your amended returns were, in effect, changed the open transaction of the 2004 earn-out right. No, I think that begs the question as to what item we're talking about. And I will agree that it is inconsistent with an open transaction method. But it is not a change in method, and there's a key distinction there. So, yes, in 2004 there was an open transaction method. So I think to illustrate, he received an in-kind contract right in 2004 and treated that as an open transaction. Had he received another contract, another earn-out right from a different company or from the same company in 2006 or 2008 and 2009, he would have had an open method for the in-kind receipt of a contract right. But that's not what he got in 2008 and 2009, and it's not what he got in 2006 and 2007. There are separate items of income that came in. And if you've got separate items of income, as the Federated case says and the Capital One case say, you have a different item and therefore no change. You've got a different transaction. And you can't have a change in method if you've got a totally different transaction. How is the difference in a different item income between 2004 and 2006 and 2007? Let's put aside the settlement payments, even though I know those are at the heart of the case, because I think those are a little harder. But the earn-out right gave him a right to income in the future. Correct. And that income in the future in the 2006-2007 was paid. Correct. I don't understand how those are different forms of income. One is guaranteeing you this or giving you this future income later to be determined, and the second is the result of that. I would turn to the language in the Federated case, which says, and there are very few cases that actually get into the specifics of defining what an item of income is. Federated and Capital One, I think, are the two leading cases. And Federated has language that says you look to what generates the income. If the fact generating the income, the transaction generating the income, is basically the same in different tax years, then you have the same item of income. Why isn't that 2004 agreement the transaction generating the income in 2006 and 2007? Because it set up the formulas and the rights to that income. Correct. Because the income is in-kind receipt. If somebody gives you a contract or a share of stock or a car for performing services for them, that is income. Could you have treated the 2004 payment as a capital asset at that time, or possession of capital and asset? Yes, but Section 83 would govern the treatment of it. And we recognize, so if somebody other than Mr. Greiner, who had provided services to Advanced Bionics, had received that right, and, in fact, there were stockholders who received that. They were investors, so they would treat it as a capital asset. Mr. Greiner received the stock options initially as an employee. That's a crutch there. Later on, you want to change the character of the 2004 payment to make it a capital asset. Well, I don't think we want to change the character. We want to change the reporting. The character is what it is. And, yes, you're right. Well, I guess the name. You're not looking at it and saying this was a capital asset. Well, I think we are, Your Honor. In 2004, we say Section 83, which governs very broadly the receipt of property for services. We say that's turned off in 2004 because it was converted. And the regulations under Section 83, 1.83-7A, says specifically that, although you can defer income when you get a stock option, as soon as you exercise the stock option or trade it for something else, you close the transaction, and it's taxable. So we say in 2004, Mr. Greiner, he didn't exercise the option, but he got something. He traded it for something else. Could you have treated that option as a capital asset at that time? Yes. But you chose not to. It was not reported that way. I don't know if there was a deliberate choice made. There was language in the disclosure document. No, but that kind of determines the accounting method, right? For future receipts of contract rights in kind, we would agree with that. Right. Yes. But it doesn't determine the accounting method for payments made on the contract right, and it doesn't determine the accounting method for dispositions, income received on dispositions. And I go back. The analogy we draw in our briefs, Your Honor, is a share of stock. So if I receive a share of stock, that is income to me. It can be a gift. It can be for services provided. It can be a lot of things. But if somebody gives me a share of stock, that's income. Two years later, I get dividends on that stock. That's also income, but it's a different item of income. Why? If you look at Federated, Federated would say that the transaction that gave rise to that income in the later years. But in your hypothetical, if somebody gives you a share of stock, don't you pay taxes on it because it's income? Not necessarily. You could treat that as a gift. Non-taxable under Section 102 of the Internal Revenue Code. Well, let's assume it wasn't a gift. I mean, it wasn't a gift here, clearly. Correct. Correct. You could treat it as compensation for services. In which case you would pay taxes on it, right? You would pay taxes, unless you treat it as an open transaction. Correct. But the basic rule is you would pay tax on that if you received it as services. Correct. Ordinary income. Ordinary income if received in exchange for services. Correct. And then if you treat it as income and then you sell it later on, and assume there was a profit, is that profit treated as income or capital gains? Capital gain is income. Capital gain is a type of income. Sure. I'm not a tax lawyer. I understand. But as capital gains, income or regular taxable income? It would be taxed as a capital gain depending upon how long you held it, wouldn't it? It would be capital gain irrespective, but as a long-term capital gain subject to preferential tax, you could hold it more than a year. Correct. But I think I'll go back again to the language in federated, and I think it's equitable. Let me ask you this. If somehow you received that stock and you treat it as an open transaction and you didn't pay any taxes on it, regular taxes on it, when you sold it later, would the income from that be treated as a capital gain or a regular income tax? It would be treated as capital gain. The fact that you didn't pay tax in 2004 in this example is irrelevant to the treatment. It would be very relevant to the duty of consistency doctrine. But how can you treat it as a capital gain if you don't treat it as a capital asset? Well, you would treat it as a capital asset, Your Honor. But you didn't in 2004. You just didn't report tax on it. That doesn't mean it's not a capital asset. A piece of property is generally going to be a capital asset. The accounting method that you used in 2004 did not treat it as a capital asset. I don't think it spoke to the treatment as capital ordinary. It treated it as an open transaction. Which he's entitled to do as if he hadn't received anything that was taxable. On the theory that it was too hard to value. Yeah. The Burnett versus Logan cases. When he received payments in later years, you keep saying those payments are not related to what he got in 2004, and I'm having trouble in that connection. They are definitely related. Yeah. Just like a dividend is related to receipt of the stock, just like disposition of stock, income on that is related to original receipt of the stock. They're just not the same quote item of income for tax purposes, and that's a very important distinction. Because you don't change methods for accounting purposes. Just because there's a factual nexus between in-kind receipt of stock and sale of the stock 50 years later doesn't mean they're the same thing. I think, again, this is difficult for me. I think what you're trying to say is that there's a difference if we look at the material items. 2004 item is different from the 2007-2008. But what if what we're looking at for purposes of 2007-2008 and 2004 is just the 2004 agreement, that that's the material item, and that's the accounting method you changed in 2007-2008, the way you looked at that prior thing, putting aside how you described the 2007-2008 payments. Right. I think, Your Honor, the distinction is that for accounting method purposes, you have to look to an item of income. So this pen is not an item of income. This is a piece of property. So for item of income purposes under Section 446E, you don't call it the pen. You call it the income. Somebody gives this to me. That's an item of income. I rent this to somebody.  I sell this. That's income. That's three distinct items of income. You don't say, Well, it's a pen. That's a balance sheet item. We're talking about income. But what if you call that a capital asset? I bought the pen. I possess it. I expect that it's going to increase in value in the future. I'm going to treat this as a capital asset. The rental income you received from renting out that pen would be ordinary income, irrespective of the fact that it's a capital asset. So I think the capital asset versus ordinary asset really isn't the issue. It's the income that an asset generates. It's an income statement issue versus a balance sheet issue. The issue here is whether or not you changed accounting methods without the permission of the IRS. With respect to an item of income, correct. So you've got to have an item of income, not just an item. Your argument is that until those later payments came in, there was no item of income to account for. There was an item of income. It was in-kind receipt of contracts. So had Mr. Greiner, as I said, received another contract the next year in-kind from Advanced Bonnex or anyone else, he would have adopted a method of reporting for in-kind receipt of contracts. But dividends paid on it or disposition of contracts is a different item of income. You have to look at the income coming in. The accounting treatment doesn't care about the balance sheet. The accounting treatment cares about the income or deductions as well. So what is your bottom line of all of this? Your bottom line is that there never was a change in? In the way Mr. Greiner and Mrs. Greiner treated dispositions of contract rights. What about the 2006-2007 payments? Didn't they initially treat that as ordinary income taxed at the regular rate? They did. Again, those are like dividends on stock. It's an item of income that is distinct factually. I know you think it's a different characterization and you may be right on this, but suppose the 2007-2008 items were also ordinary income. That's begging the question. They were the same types of payments. I know you say they were settlement payments versus payments of the earn-out right. Let's just assume they were also payments of the earn-out right. Wouldn't you now be changing the accounting method for those later payments versus the 2006-2007 payments? I think yes, and that's what the lower court did below. It defined the entire universe as a unitary item of income. Once you define the entire universe as the nail, then the change of method is a hammer that hits all of it. But Federated and Capital One and the other few cases that discuss these should say you have to look to the facts that give rise to the income. I just want to make clear because I don't think you, and again, it's probably my fault. Let's assume that 2006 payment was of the earn-out right, was ordinary income that you treated as ordinary income, which is what you did. Correct. Instead of it being a settlement payment, if the 2008 payment was also an ordinary, was just the earn-out right, wouldn't this consistency require it to be treated the same? Yes, Your Honor. So the key distinguishing factor on that from 6 to 8 is that you think it's a settlement payment, which is a different item of income. Correct. So if the settlement had never occurred and Mr. Greiner received the payments in 8 and 9 under the ordinary course of the contract right, he would have adopted a method for items, the dividends, if you will, in 6 and 7 that would have bound him in 8 and 9. But he didn't get those ordinary dividend-type payments in 8 and 9. There was a corporate divorce, and he got what the papers characterize as buyout payments in 2008 and 2009. The facts giving rise to those are a corporate divorce, not dividends paid pursuant to the merged corporation, and not an in-kind contract received in connection with a corporate combination in 2004. Okay. You're very close to being out of time, but I'll restore your rebuttal. Okay. Thank you, Your Honor. Mr. Schneider. May it please the Court, Deborah Schneider for the United States. The issue in this case is that the Greiners cannot get the refunds that they seek for 2008 and 2009 without constructively changing their earn-out reporting going back to 2004. And, in fact, the Greiners have admitted that all the reporting is interdependent. When you look at their administrative refund claims, they said that they shouldn't have used the open transaction method. They should have reported a closed compensation transaction in 2004, and they should have paid tax on the fair market value of the earn-out payments in 2004. How is the 2004 earn-out right contract the same type of item as the 2008 payment? Right. And I understand you're asking about the taxpayer's primary argument in this case, which is that it's different items of income. And that doesn't work basically for three overarching reasons. First, it's beside the point. Second, it contradicts the record. And third, it's wrong as a matter of law. The reason it's beside the point is because the taxpayers have admitted that the open transaction method is a method of accounting. And they've also admitted that they need to use the closed transaction method as of 2004 in order to get the refunds that they seek in this case. So that's a claim that would change the timing of when they report the value of the earn-out right. And they admit that as well. There's actually a chart in the Court of Federal Claims opinion. The material items we're talking about here aren't really the 2007 and 2008 payments. It's the treatment of the 2004 earn-out right itself. It's the income associated with the earn-out right. In 2004, it was treated as an open transaction. In order to get the tax treatment they want for the 2007-2008 payments, they have to change the treatment of that earlier right. Right. I mean the value of the earn-out right is really the same thing as the value of the payments. In the amended returns, they want to treat that income as a capital gain. That's right. The only way you can get a capital gain is if you treat the 2004 earn-out payment as a capital asset. And they didn't do that. And that would be a closed transaction. They would have to treat it as a closed transaction. They'd also have to prove independently of the method of accounting issue that there was a sale or exchange of a capital asset. That's actually a separate hurdle that they have to overcome. But Your Honor is absolutely correct. In order to get the capital gain treatment for 2008 and 2009, they'd have to change their method of accounting to the closed transaction method going back. Why wouldn't the IRS give them permission to do that? Excuse me? Why would the IRS not give them permission to do that? Because. Reading a set of amended returns. The statute, well the timing, I mean the year is 2004 is a closed year. But the statute, section 446E, says that a taxpayer cannot change a method of accounting retroactively. A taxpayer has to request the IRS's permission for a change before changing the method. And this is something that Capital One actually discusses, that if this were not the rule, you'd send revenue projection basically into a roiling and unpredictable state. So what Capital One is actually, it's a resounding reaffirmation of the government's ability to hold a taxpayer to the method of accounting that they use on their returns. What Capital One did is they had tried, they had filed a request to change a method of accounting. The request was ambiguous. Then they reported late fees in a certain way on their returns. And then Capital One, sort of like taxpayers here, wanted to retroactively change their method and say, you know, we should have reported it differently starting back then. And the court said, no. It doesn't matter if the taxpayer is arguing that the new method is the only correct method. You can't retroactively change a method of accounting. I'd also note that the argument that the 2008 and 2009 payments are a different item from the other earn out income contradicts the record. Because when you look at the amendments to the merger agreement, which is how the parties settled the litigation, the amendments refer to these payments as the first earn out payment. That was the 2008 payment. And the earn out obligation, that was the 2009 payment. So all of these rights arose from the 2004 merger agreement. Mr. Greiner received an earn out right in exchange for the cancellation of his stock options. And basically what the settlement and what the amendments were doing is they were establishing a value and a payment schedule for that right as part of unwinding the merger, essentially. Another problem with the different item of income argument is that it also misunderstands how the open transaction method works. I understand that they're saying they adopted the open transaction method of contract rights. The reason that doesn't work is because the open transaction method is when a taxpayer takes the position that they've received something, but the value cannot be ascertained in the year of receipt. But the flip side of the open transaction method is that they need to report the income over time in the years that it's received. If a taxpayer adopted the only transaction method only for the first year, the taxpayer would never report any income because that's the year that they're saying the value cannot be ascertained. So, I mean, for all of those reasons, we think the Court of Federal Claims was correct when it defined the item of income as the income associated with the earn out, right, or earn out income for short. But, again, we don't even necessarily have to get into what is or isn't an item of income because the taxpayers have admitted the open transaction method is a method of accounting and that they would have to change the closed transaction method of accounting as of 2004 in order to get the capital gain treatment that they seek for 2008 and 2009. Another point I would make is that this is not stock. So I'm not sure that an analogy to stock is really helpful. Really what this was is that it was a right to future payments, sort of like the lottery cases or something like that, and that's the foundation of the government's argument that heritage. Can a taxpayer choose to treat an earn out right as a capital asset? Well, it's not a choice. It's a question. In order to get capital gain treatment, they would have to show that they sold or exchanged a capital asset. And the taxpayer in this case could not have chosen to treat the earn out right as a capital asset because all it was was a right to future payments, analogous to the lottery cases. The principle is that if what a taxpayer holds is a right to future payments, getting a lump sum in exchange for those future payments does not convert the So I would say no. And the other issue is that in order to get capital gain treatment, they would have to have sold or exchanged the earn out right. And either a sale or an exchange involves a transfer. And there was no transfer of the earn out right to Boston Scientific. It was essentially a settlement. And an extinguishment of a debt is not a sale or exchange. So, no, I don't think that was a choice that was available. Anything else? If the court has no further questions, we will rest on our brief. Thank you. Okay, thank you. Desmond, we'll restore your three-minute time. Just briefly to follow up on the item of income question, I think Ms. Snyder characterized the question correctly in saying that the issue before this court is what is the income associated with the earn out right. And I'd go back to the language, and I just looked at it again, in Capital I. Capital I involved different types of fees being generated by a credit card business. And on page 161 of the tax court's decision in that case, later affirmed by the Fourth Circuit, the court says that late fees are earned for reasons independent of the reasons other type of income on credit cards is earned. And they say finance charges, over limit fees, interchange and advance fees. And then it concludes that late fees are a separate and distinct item of income. So Capital I has all sorts of fees coming in on the credit card in the exact same year. And the court there at the government's insistence finds that those are separate items of income. Fees coming in, and I'll equate those to dividends on stock, coming in the same year. If they're different kinds of dividends, preferred or ordinary, those are different items of income. We have something dramatically different from that here. We've got a corporate combination transaction where Mr. Griner gets a contract in kind. And four years later, we have a corporate divorce where he is given buyout payments, characterized in the papers as buyout payments. So if at the government's insistence in Capital I, you've got different kinds of credit card fees in the same year being treated as separate and distinct items of income under Section 446E, how do you have completely different? I mean, obviously, a corporate combination and a corporate divorce are not the same transaction. The facts giving rise to the income from those are not the same transaction. So that, I think, answers from our perspective the change in method. If they're different items, you don't have a change between different years. I do want to come back and touch just briefly on the duty of consistency doctrine because I think that is where if there's any sense of unfairness or windfall or prejudice to the government, that's where the court below should have focused its attention. Is Mr. Griner reporting something in 2004 and coming back four years later saying, aha, the government statute is closed, I now get a windfall by reporting this as capital gain? And in the audit, before we ever got to the Court of Federal Claims, we presented calculations to the IRS showing that although we didn't pay tax in 2004, under an open transaction theory, not reporting method, we did pay tax up to almost the exact same amount in 2006 and 2007, such that by the time we get to 2008, we've cleared the decks on that. There's no windfall anymore. The government's not harmed. The government's not prejudiced. And as this court said in the Baker Hughes case, in order to invoke the duty of consistency, you have to have harm and prejudice to the government. Crossly cited by the court in Baker Hughes calls that prejudice through the loss of taxes. Where's the loss of taxes? We show that there is no loss of taxes. If there's some concern about paying fast and loose, it's the duty of consistency doctrine that comes back and helps the government address that. We confronted that head on. The Court of Federal Claims never addressed that, and the government doesn't address that here. It doesn't even cite Baker Hughes in its briefs. So we are not looking for a windfall. We're not looking to prejudice the government. We're looking for the proper federal tax treatment of the buyout payments received in 2008 and 2009. As a capital asset, those payments are, for Mr. Greiner, properly taxed at long-term capital gain rates. He held the contracts for more than a year. And I think on that discrete point, because Ms. Snyder referenced it, the FOIA case out of the tax court, I think, delves into the sale or exchange issue and those issues in some detail, and also the open transaction doctrine, to say that you can have contract rights. There it was, janitorial service contract rights, that when you dispose of them, you get capital gain, preferential capital gain treatment. So unless the panel has any further questions, I would rest. No, I think we have that. Thank you very much. Thank you.